UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
DIANE ROBINSON,

                              Plaintiff,

          -against-

ROOSEVELT UNION FREE SCHOOL
DISTRICT, ROBERT WAYNE-HARRIS,
DONALD HUMPHREY, FAITH VAUGHN-
SHAVLIO, DONALD CRUMMELL,
BARBARA SOLOMON, TREVA PATTON,
YVES MONPOINT, and JOHNATHAN
FINCH (in their individual and
official capacities),

                              Defendants.
------------------------------------------------------X

**ORDER**
10-CV-834 (SJF)(ETB)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  MAY 3 1 2012  ★

LONG ISLAND OFFICE

FEUERSTEIN, District Judge:


     On February 25, 2010, plaintiff Diane Robinson ("plaintiff" or "Robinson") filed this

action against defendants Roosevelt Union Free School District ("Roosevelt" or "the District"),

Robert Wayne-Harris ("Wayne-Harris"), Donald Humphrey ("Humphrey"), Faith Vaughn-

Shavlio ("Vaughn-Shavlio"), Donald Crummell ("Crummell"), Barbara Solomon ("Solomon"),

Treva Patton ("Patton"), Yves Monpoint ("Monpoint"), and Johnathan Finch ("Finch"), in their

individual and official capacities (collectively, "defendants"). [Docket Entry No. 1].[1]  On

---

[1] The amended complaint identifies Wayne-Harris as superintendent of the District.
Amended Complaint at ¶ 8.  Humphrey, Vaughn-Shavlio, and Monpoint are identified as
principals of Roosevelt High School, id. at ¶¶ 9, 10, 14, Solomon and Patton are identified as
"Assistant Principal and Principal of Roosevelt Middle School and High School," id. at ¶¶ 12,
13, Crummell is identified as an "Attendance Officer of Roosevelt High School," id. at ¶ 11, and
Finch is identified as "an Assistant Principal," id. at ¶ 15.

1

December 16, 2010, plaintiff filed an amended complaint, alleging, inter alia, violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. [Docket Entry No. 12].

Before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Docket Entry No. 26]. For the reasons that follow, the motion is granted.

I.    Background

A.    The Plaintiff

Plaintiff was previously employed by the District as a social studies teacher. She was hired as a substitute teacher during the 1978-1979 school year and appointed as a probationary teacher in February 1982. Defendants' Statement Pursuant to Local Rule 56.1 ("Def. 56.1 Stat.") [Docket Entry No. 28] at ¶¶ 20-21.[2] On February 1, 1984, plaintiff was granted tenure. Id. at ¶ 22.

Plaintiff states that she has "suffered from various medical conditions," including diabetes, blood clots, and high blood pressure. Amended Complaint ("Am. Comp.") [Docket Entry No. 12] at ¶ 19. In 1998, she underwent surgery to remove a tumor from her abdomen and missed five (5) months of work. Id. at ¶ 20. As a result of that surgery, she claims to "suffer[] disabilities to her legs, back and hips," which prevent her from walking up stairs, standing for

---

[2]  To the extent plaintiff has failed to dispute the facts set forth in defendant's Rule 56.1 statement, those facts are "deemed admitted." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

2

long periods of time, lifting heavy objects, bending over, or engaging in other physical activity. Id. at ¶ 21. Plaintiff alleges that when she returned to work in April 1999, her doctor forwarded a letter to the District's principals and administrators explaining these restrictions on her physical activity. Id. at ¶ 22.

Plaintiff had surgery again in 2003, when she had a tumor removed from her leg. Id. at ¶ 28. As a result, she was out of work for seven (7) weeks. Id. She alleges that she again provided a "medical note" to the District's principals and administrators. Id.

The amended complaint alleges principally that plaintiff suffered discrimination on the basis of her disability and age, and contains a wide variety of allegations of purportedly discriminatory conduct by the District and its employees.

### B.      Allegations of Amended Complaint

#### 1.      Location of Plaintiff's Classroom

Plaintiff alleges that in or around April 1999, due to her alleged disability, she requested assignment to a classroom near the entrance on the first floor of the school building. Am. Compl. at ¶ 23. Plaintiff claims that she was assigned a classroom located on the first floor, but in the building's "far wing," and that the District therefore failed to accommodate her. Id. at ¶¶ 24-25.

#### 2.      Teaching Materials

Plaintiff alleges that during the 2002-2003 school year, she was "forced to teach economics and civics classes with books that were several years old and contained out-of-date

material." Id. at ¶ 26. She claims that "[s]imilarly situated teachers who did not suffer from a disability, younger teachers, and/or teachers who did not complain about Roosevelt's discriminatory practices received updated textbooks for all of their students." Id. at ¶ 27.

### 3. Integrated Class Assignments

At the beginning of the 2004-2005 school year, plaintiff was assigned to teach "integrated" classes, which included both special education students and non-special education students. Id. at ¶ 30; see also Def. 56.1 Stat. at ¶ 49. According to plaintiff, she sent a letter to her assistant principal and other administrators on November 3, 2004 stating that she "could not move fast enough to properly respond to the students" in an integrated class, and requesting that she not be assigned to integrated classrooms. Am. Compl. at ¶ 32.[3] She sent a letter to District administrators on March 3, 2005, requesting to be relieved of these duties because she was an "A.D.A teacher." Id. at ¶ 33; Pl. Ex. G [Docket Entry No. 31-7].

According to plaintiff, at the beginning of the 2005-2006 school year, she again requested that she not be assigned to integrated classes and alternatively requested "volunteers" or "qualified assistants" to assist her in teaching these classes. Am. Compl. at ¶¶ 36-37, 39. According to plaintiff, the District "rejected" these requests. Id. She claims that she renewed her request to not be assigned to integrated classes at the beginning of the 2006-2007, 2007-2008,

_____

[3] By all appearances, the parties have not provided the Court with a copy of the November 3, 2004 letter, although they have filed a letter from Robinson dated October 29, 2004. In that letter, Robinson objects to teaching integrated classes, but does not mention her alleged disability; rather, she complains that she had "not received training as a special education teacher" and that she had not "attended any workshops in this subject area." Pl. Ex. G [Docket Entry No. 31-7].

2008-2009, and 2009-2010 school years. Id. at ¶¶ 46, 53, 54, 56.

### 4. Parking Space

During the 2005-2006 school year, plaintiff requested a handicapped parking spot in the rear of the school building. Def. 56.1 Stat. at ¶¶ 30, 32. Plaintiff wrote a letter to Humphrey dated December 1, 2005, specifically requesting "a handicapped parking space near the 700 wing (inside gate)." Def. 56.1 Stat. at ¶ 33; Def. Ex. L [Docket Entry No. 29-12]. At that time, however, all of the handicapped parking spaces were in front of the school building, near its main office. Def. 56.1 Stat. at ¶ 31.

In or around April or May of 2006, plaintiff received a handicapped parking space located in the rear of the school building, but "outside the gate." Id. at ¶¶ 35-36. Plaintiff conceded that there were no available designated parking spaces inside the gate. Id. at ¶ 37; Def. Ex. E [Docket Entry No. 29-5] at 20:13-21:2. In the amended complaint, she claims that she again requested a closer parking space at the beginning of the 2006-2007 and 2007-2008 school years. Am. Compl. at ¶¶ 45, 52.[4]

### 5. Proximity to Ladies' Bathroom

Plaintiff claims that at the beginning of the 2005-2006 school year, she requested to be placed in a classroom near a ladies' bathroom in order to accommodate her disability. Id. at ¶

---

[4] These allegations, however, are contradicted in plaintiff's own opposition brief. See Plaintiff's Brief [Docket Entry No. 31] at ¶49 ("Robinson did not make any requests for accommodations from the Roosevelt School District during the 2006-2007 school year . . . ."); id. at ¶50 ("Robinson did not make any requests for accommodations from the Roosevelt School District during the 2007-2008 school year that were not provided.").

38. According to plaintiff, the District "rejected" this request, id.; however, at the beginning of the 2006-2007 and 2009-2010 school years, she again requested a classroom closer to a ladies' bathroom and closer to the school entrance. Id. at ¶¶ 43, 55.

6.    Teaching Observations and Evaluations

Plaintiff alleges that, in 2006, she received unfavorable evaluations for reasons related to her physical disabilities. She claims she was formally reprimanded for sitting down during class, even though she had informed her superiors that she was incapable of standing for long periods at a time; that non-party Broderick Spencer ("Spencer") noted in a March 2006 formal observation that plaintiff "need[ed] better mobility;" and that Spencer stated in a May 2006 formal observation that "[i]t is strongly recommended that [plaintiff] stands at her door between class periods to greet her students," even though she was incapable of doing so. Id. at ¶ 40-42.

7.    Missed Paycheck

Plaintiff claims that, also in 2006, she was underpaid by four thousand one hundred nineteen dollars ($4,119.00), because "[d]efendants failed to provide [her] with one of her paychecks for the year." Id. at ¶ 49. She alleges that she was treated differently from "[s]imilarly situated teachers who did not suffer from a disability, younger teachers, and/or teachers who did not complain about Roosevelt's discriminatory practices." Id.

8.    Student Grades

Near the end of the 2006-2007 school year, Humphrey, the school principal, requested

6

that all teachers provide him with a list of students who were in danger of failing a course and not

graduating. Def. 56.1 Stat. at ¶ 59. Plaintiff initially submitted a list of five (5) students, but

subsequently submitted an expanded list including twenty-five (25) students. Id. at ¶¶ 60-61.

Humphrey directed that the additional students' grades be changed to passing. Id. at ¶¶ 62-63.

Plaintiff again alleges that she was targeted on the basis of her disability, age, and as retaliation

for her complaints about the District. Am. Compl. at ¶ 50.


B.      Plaintiff's Discrimination Complaints

On October 29, 2004, plaintiff filed a formal complaint against the District with the

Nassau County Commission on Human Rights, alleging discrimination on the basis of her age

and disability. Am. Compl. at ¶ 29.

On or about October 20, 2006, plaintiff filed a Charge of Discrimination with the U.S.

Equal Employment Opportunity Commission and New York State Division of Human Rights,

alleging retaliation, as well as age and disability discrimination. Def. Ex. M [Docket Entry No.

29-13]. In the charge, plaintiff stated that she had been "teaching Special Education in a

Consultant/Teaching assignment," but that she felt "at times . . . that [she could] not physically

handle the demands of the position due to [her] poor mobility." Id. at 2. She claimed that the

Director of Special Education had created a "hostile work environment" and that she was being

discriminated against on the basis of her age and disability. Id.

In a letter dated February 15, 2007, the EEOC advised plaintiff that it was "unable to

conclude that the information obtained establishes violations of the statutes," and notified

plaintiff of her right to sue. Id. at 6. Then, in a Notice of Intent to Reconsider dated March 9,

2007, the EEOC rescinded its February 15, 2007 dismissal. Id. at 7. On or about July 16, 2007, plaintiff amended her charge of discrimination by adding allegations concerning the decision to alter her student grades. Id. at 3.

In a determination dated September 29, 2008, the EEOC found "reasonable cause to believe that [the District] failed to accommodate [plaintiff] and then retaliated against her by both failing to engage in a good faith effort in the interactive process and by excluding her from terms, conditions and benefits of employment that other teachers, who had not participated in a protected activity, were allowed to partake of." Id. at 10. On or about December 4, 2009, the Department of Justice notified plaintiff that it would not file suit on her behalf and provided a "right to sue" letter. Id. at 11-12.


C.      Plaintiff's Leave of Absence and Retirement

Plaintiff was hospitalized in January 2010 and subsequently missed over one (1) month of work. Am. Compl. at ¶ 57. She claims that she was formally reprimanded after exhausting her available sick leave. Id. at ¶ 58.

On March 25, 2010, plaintiff was granted a medical leave of absence from January 8, 2010 through June 30, 2010. Def. 56.1 Stat. at ¶ 64; Def. Exhibit I [Docket Entry No. 29-9]. By letter dated May 5, 2010, plaintiff announced her intent to retire from her teaching position on June 30, 2010, and the Board of Education subsequently approved her retirement. Def. 56.1 Stat. at ¶¶ 65-66; Def. Exhibit J [Docket Entry No. 29-10].

D.    Procedural History

Discovery in this matter closed on October 31, 2011, and the parties appeared for a

pretrial conference on November 1, 2011. Following various settlement and status conferences,

it appeared that the parties would resolve their dispute out of court. Accordingly, the case was

administratively closed, with leave to reopen the matter within a set period of time. Plaintiff

filed a timely motion to reopen the case, which the Court granted, and defendants renewed their

motion for summary judgment.


II.    Discussion

A.    Summary Judgment Standard

"Summary judgment must be granted where the pleadings, the discovery and disclosure

materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d

347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment

motion, the district court must resolve all ambiguities, and credit all factual inferences that could

rationally be drawn, in favor of the party opposing summary judgment and determine whether

there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun &

Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted).

"A fact is material when it might affect the outcome of the suit under governing law." Id.

An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed.

2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the

absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. * * *. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or upon the mere allegations or denials of the [nonmoving] party's pleading." Id. (internal quotation marks and citations omitted).

B.     Plaintiff's Discrimination Claims

Plaintiff first claims that defendants discriminated against her on the basis of her age and disability, in violation of the ADEA and ADA. It appears that plaintiff's claims are as follows: that she was subjected to unequal terms, conditions, and privileges of her employment, that she was constructively discharged, and that defendants failed to accommodate her. See Am. Compl. at ¶¶ 59-61. As discussed above, the factual basis for these claims are: (1) that she was not assigned to a classroom located both on the first floor of the school building and close to the building entrance; (2) that she "was forced to teach . . . with books that were several years old and contained out-of-date material"; (3) that she was assigned to teach integrated classes; (4) that

10

she was not provided with a parking spot located both in the rear of the school building and inside the gate; (5) that she was not provided with a classroom "near a ladies [sic] bathroom"; (6) that she received negative evaluations for failing to perform tasks she was physically incapable of performing; (7) that she did not receive one (1) of her paychecks in 2006; and (8) that Humphrey directed changes to several of her students' grades. Id. at ¶¶ 23-59.[5]

### 1.    Age Discrimination

The ADEA prohibits an employer from "discriminat[ing] against any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In analyzing a claim of age discrimination under the ADEA, the Court employs the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105-106 (2d Cir. 2010). Under this analysis, the plaintiff "bears the initial burden of establishing a prima facie case of discrimination." Id. at 106 (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817). "If the plaintiff does so, the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action." Id. (quoting McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result

---

[5] In appearances before the Court, plaintiff's counsel has conceded that his client's only viable claim stems from the alleged failure to provide an adequate parking space. Nevertheless, since plaintiff has not actually withdrawn the remaining claims, and for the sake of completeness, the Court will address all of the claims raised in the amended complaint.

of discrimination." Id. (citing Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008)).

Prior to the Supreme Court's decision in Gross v. FBL Financial Svcs., Inc., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), "the employee could prevail if the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find 'that her dismissal was motivated *at least in part* by age discrimination.'" Id. (quoting Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 114 (2d Cir. 2007)) (emphasis in original). After Gross, however, "a claimant bringing suit under the ADEA must demonstrate that age was not just a motivating factor behind the adverse action, but rather the 'but-for' cause of it." Leibowitz v. Cornell Univ., 584 F.3d 487, 498 n. 2 (2d Cir. 2009) (citing Gross, 557 U.S. at 175-78; 129 S.Ct. at 2350-51).

In order to establish a prima facie case of age discrimination, Robinson must demonstrate that: (1) she was within the protected age group; (2) she was qualified for the position she held; (3) she experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. Gorzynski, 596 F.3d at 107 (citation omitted). She has failed to do so. Although plaintiff falls within the protected age group and was qualified for her position, there is absolutely no evidence from which the Court can infer that any of defendants' actions or inactions were motivated by age discrimination. Indeed, plaintiff all but conceded during her deposition that there was no basis for this claim. Def. Ex. E [Docket Entry No. 29-5] at 123:23-124:15 ("Q: How did you feel you were being discriminated based on your age? . . . [D]o you mean you were one of the teachers that have been there for the longest time? A: Yes. Q: So it wasn't your age? A: Right.").

In any event, the Court considers this claim abandoned because plaintiff has failed to

address it in her opposition brief. See Taylor v. City of N.Y., 269 F.Supp.2d 68, 75 (S.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."). Summary judgment is therefore granted as to plaintiff's ADEA claim.

### 2. Disability Discrimination

"The ADA prohibits discrimination against a 'qualified individual on the basis of disability' in the 'terms, conditions, and privileges of employment.'" Kinneary v. City of New York, 601 F.3d 151, 155 (2d Cir. 2010) (quoting 42 U.S.C. § 12112(a)). "A plaintiff must prove that: '(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability.'" Id. (quoting Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005)).

Plaintiff has not demonstrated that she was "disabled," or that she was regarded as "disabled," at the time of the incidents at issue. For purposes of the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1).

"In determining whether an individual has a disability for purposes of the ADA," the Second Circuit has "applied the three-step approach taken by the Supreme Court in Bragdon v. Abbott, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)." Weixel v. Bd. of Educ. of City

of New York, 287 F.3d 138, 147 (2d Cir. 2002); see also Zinnamon v. New York City Civilian Complaint Review Bd., No. 08-CV-02155, 2010 WL 3516218, at *8 (E.D.N.Y. Aug. 30, 2010). Plaintiff must show: (1) that she suffers from a physical or mental impairment, which (2) limits a "major life activity," (3) "substantially." Id.[6]

Plaintiff alleges in her amended complaint that she was limited in her ability to "among other things, walk up stairs, stand for long periods of time, lift heavy objects, bend over, or engage in any physical activity." Am. Compl. at ¶ 21. Even assuming that plaintiff has identified a major life activity that was impaired, she has not presented any evidence of "substantial limitation" for purposes of the statute at times relevant to this action. At most, plaintiff points to the determination of an administrative law judge for the Social Security Administration, who found in June 2011 that plaintiff was "under a disability as defined in the Social Security Act since January 8, 2010, the alleged onset date of disability." Plaintiff's Brief at 15-16; Pl. Ex. O. This finding is not sufficient on its own to allow a reasonable juror to find a

---

[6] The ADA Amendments Act of 2008 ("ADAAA") "expanded the class of individuals entitled to protection under the ADA." Kantrowitz v. Uniondale Free School Dist., 822 F.Supp.2d 196, 208 n. 10 (E.D.N.Y. 2011). Under the ADAA:

> "An individual meets the requirement of 'being regarded as having such an impairment' if the individual established that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."

Davis v. New York City Department of Education, No. 10-cv-3812, 2012 WL 139255, at *5 (E.D.N.Y. Jan. 18, 2012) (citations omitted). However, "[f]ederal courts have uniformly decided that the ADAA will not be retroactively applied to conduct that preceded its effective date." Parada v. Banco Indus. de Venezuela, C.A., No. 10 Civ. 0883, 2011 WL 519295, at *4 n. 4 (S.D.N.Y. Feb. 15, 2011). Since the ADAA became effective on January 1, 2009, this definition applies only to a very limited number of plaintiff's claims. The Court finds, however, that plaintiff has not demonstrated her disability even under either definition of the term.

"substantial limitation" on any of plaintiff's major life activities. See, e.g., Pinto v. Massapequa Public Schools, 820 F.Supp.2d 404, 408 (E.D.N.Y. 2011) ("While almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled.") (citations and internal quotation marks omitted); McDonald v. City of New York, 786 F.Supp.2d 588, 606 (E.D.N.Y. 2011) ("vague and ambiguous descriptions" of plaintiff's limitations, coupled with evidence that plaintiff could walk certain distances, "cannot support a finding by a rational factfinder that plaintiff was substantially limited "); see also Curtis v. Humana Military Healthcare Svcs., Inc., 448 Fed. Appx. 578, 580-81 (6th Cir. 2011) (plaintiff's difficulty with balance, frequent muscle cramps, and reliance on cane to walk were insufficient to demonstrate disability).

Nor has plaintiff established that she suffered an adverse employment action because of a disability or perceived disability. "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); see also Simms v. City of New York, 160 F.Supp.2d 398, 406 (E.D.N.Y. 2001). "A materially adverse change might be indicated by a termination of employment, a demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Galabya, 202 F.3d at 640 (citation omitted).

Although plaintiff alleges in her complaint that she was constructively discharged, Amend. Compl. at ¶ 59, she has provided no support for that proposition, and the Court has found none. Rather, the parties' submissions indicate that plaintiff retired after suffering from a

medical condition, entering the hospital, and being granted a significant leave of absence. Although plaintiff claims that a classroom observer placed some unfavorable comments in her teacher evaluations, the Court agrees with defendants that this does not rise to the level of an adverse employment action. See generally Henderson v. New York, 423 F.Supp.2d 129, 142-43 (S.D.N.Y. 2006).[7]

Third, plaintiff's own deposition testimony demonstrates that many of her discrimination claims are baseless. Although plaintiff was provided textbooks that were "several years old," she testified that other teachers' supplies were even worse, and that the District "did make sure that [plaintiff's] classes had pretty much up-to-date books." Def. Ex. E at 96:7-17. To the extent plaintiff was provided with inadequate or outdated teaching materials, there is no evidence that it was a result of discrimination. It is undisputed that Humphrey directed grade changes not just for plaintiff's students, but for students of other teachers, as well, Def. 56.1 Stat. at ¶ 63, and there is no evidence that the direction was based upon discriminatory reasons. Moreover, plaintiff appears to concede that her classroom was either "across from" or "around the corner from" the women's lavatory during each school year between 2005 and 2010. Def. 56.1 Stat. at ¶¶ 23-29; see also Def. Ex. E at 38:4-5 (testifying that her 2005-2006 classroom was "across from the girls' lavatory"); id. at 113:3-9 (testifying that her 2008-2009 classroom was "right around the corner" from restroom). Finally, when asked about her allegation of a paycheck that was withheld in 2006, plaintiff testified that "it happened to everyone," id. at 163:16, again severely undermining any claim of discrimination.

---

[7] To the extent plaintiff alleges a failure to accommodate, those claims will be addressed below.

In any event, the majority of plaintiff's claims must be dismissed because plaintiff has failed to exhaust her administrative remedies, and her time to do so has now expired. "In order to bring an employment related ADA claim . . . a plaintiff must exhaust his administrative remedies and obtain a right to sue letter." Chesney v. Valley Stream Union Free School District No. 24, No. 05 Civ. 5106, 2009 WL 1405203, at *7 (E.D.N.Y. May 14, 2009); see also Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004). "The ADA . . . require[s] claimants to file a charge of discrimination or retaliation with the United States Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory or retaliatory act." Valtchev v. City of New York, 400 Fed. Appx. 586, 588 (2d Cir. Nov. 15, 2010) (citing 42 U.S.C. § 12117(a)); see also George v. King County Hosp. Ctr., No. 11-CV-5543, 2012 WL 373345, at *2 (E.D.N.Y. Feb. 2, 2012) ("The 300-day time frame acts as a statute of limitations and charges filed outside of the window are barred by the failure to file a timely charge."). A claim be must filed in federal court within ninety (90) days of the plaintiff's receipt of a right-to-sue letter from the EEOC. See 42 U.S.C. § 12117(a); Johnson v. St. Barnabas Nursing Home, 368 Fed. Appx. 246, 247-48 (2d Cir. 2010).

In her EEOC charge, plaintiff complains only of her assignment to teach integrated classes and the fact that her principal had changed her grades. See Def. Ex. M. There is no evidence that plaintiff raised any of her remaining claims, including those related to the location of her classroom and parking spot, in her EEOC charge. Therefore, the majority of plaintiff's claims must be dismissed.

3. Failure to Accommodate

To the extent plaintiff alleges failures to accommodate, defendants are entitled to judgment on these claims, as well. A party may violate the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)). In order to establish a prima facie case of disability discrimination arising out of a failure to accommodate, plaintiff must show that:

> (1) "[P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

Id. at 97 (quoting Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir. 2006)). "In the context of the ADA, reasonable accommodation may include, inter alia, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" Id. (quoting 42 U.S.C. § 12111(9)(B)).

Plaintiff appears to claim that the District failed to accommodate her by: (1) not providing a classroom near the school entrance; (2) by not providing a classroom near a ladies' bathroom; (3) by not providing a parking spot that was sufficiently close to her classroom; and (4) by assigning her to teach integrated classes. The first three (3) of these claims fail because plaintiff failed to exhaust her administrative remedies, as discussed above.[8]

Plaintiff's claim arising from her assignment to inclusion classes also fails as she has not

---

[8] In addition, plaintiff has abandoned claims one and two. Taylor, 269 F.Supp.2d at 75.

demonstrated that she was "a person with a disability under the meaning of the ADA," and plaintiff has not demonstrated that being assigned to integrated classes prevented her from performing the essential functions of her position.

The ADA "does not require the employer to provide every accommodation a disabled employee may request . . . ." Scalera v. Electrograph Sys., Inc., --- F.Supp.2d ----, 2012 WL 991835, at *11 (E.D.N.Y. Mar. 26, 2012) (citing cases). Nor does the ADA "obligate the employer to meet the personal preferences of disabled employees." Raffaele v. City of New York, No. 00-CV-3837, 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004). "Accommodations need only be 'sufficient to meet the job-related needs of the individual being accommodated.'" Id. (citing cases).

Regulations promulgated by the EEOC to implement the ADA define the term "essential functions" as "the fundamental job duties of the employment position the individual holds or desires. The term . . . does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); see also Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 8 (2d Cir. 1999). Plaintiff claims that she "could not move fast enough to properly respond to the students," Am. Compl. at ¶ 32, and stated in her EEOC complaint that "at times [she felt] that [she could] not physically handle the demands of the position due to [her] poor mobility," Def. Ex. M. Although plaintiff may have preferred to have been assigned to non-integrated classes, she has not demonstrated that she was unable to perform the essential functions of her position without this accommodation. See, e.g., Konieczny v. New York State Div. of Parole, 647 F.Supp.2d 256, 264 (W.D.N.Y. 2009) (finding accommodations "not necessary for [plaintiff] to perform the essential functions of her position"); Azrelyant v. B. Manischewitz Co., No. 98-CV-2502, 2000 WL

19

264345, at \*8 (E.D.N.Y. Jan. 13, 2000) (same). Indeed, there is no indication that plaintiff was

unable to or did not perform her duties in a satisfactory manner. See generally Micari v. Trans

World Airlines, Inc., 43 F.Supp.2d 275, 283 (E.D.N.Y. 1999) (reasonable accommodation was

not necessary when plaintiff "performed regular work for several months"). Furthermore,

plaintiff was provided with a special education teacher to assist her in teaching the integrated

classes, Def. 56.1 Stat. at ¶¶ 54-55, and she has failed to demonstrate that this was not a

reasonable accommodation. Summary judgment is therefore granted as to plaintiff's failure to

accommodate claims.


### 4. Retaliation

Plaintiff further claims that defendants retaliated against her after she filed complaints of

discrimination with the Nassau County Commission on Human Rights and EEOC. 42 U.S.C. §

12203(a) provides as follows: "No person shall discriminate against any individual because such

individual has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this chapter."

> "To establish a prima facie case of retaliation under the ADA, 'a plaintiff must
> establish that the employee was engaged in an activity protected by the ADA, (2)
> the employer was aware of that activity, (3) an employment action adverse to the
> plaintiff occurred and (4) there existed a causal connection between the protected
> activity and adverse employment action.'"

Russo v. Estee Lauder Corp., --- F.Supp.2d ----, 2012 WL 694842, at \*24 (E.D.N.Y. Mar. 1,

2012) (quoting Parrella v. Lawrence & Memorial Hosp., No. 08 Civ. 1445, 2009 WL 1279290, at

\*3 (D. Conn. May 5, 2009)).

As discussed above, plaintiff has failed to demonstrate that she suffered any adverse employment action. Even if plaintiff had done so, she has failed to proffer any evidence of a "causal connection" between her complaints and any allegedly adverse employment actions. Therefore, summary judgment is also granted with respect to all claims of retaliation.

### C. Plaintiff's Constitutional Claims

Plaintiff also asserts a claim pursuant to 42 U.S.C. § 1983 for alleged violations of her First and Fourteenth Amendment rights. Amend. Compl. at ¶¶ 61-62. These claims are also deemed abandoned because plaintiff has not defended them against defendants' motion for summary judgment. Furthermore, as defendants point out, plaintiff has failed to provide any evidence that she was treated differently from similarly situated individuals, and failed to provide any basis for a <u>Monell</u> claim against the District.

### D. Plaintiff's State Law Claims

Plaintiff also asserts a claim pursuant to New York Executive Law § 290 <u>et seq.</u> ("New York State Human Rights Law"). Am. Compl. at ¶¶ 61, 63. "Section 3813 of New York's Education Law requires the filing of a notice of claim prior to the commencement of an action against the [Department of Education] or its officers." <u>Smith v. N.Y. City Dept. of Educ.</u>, 808 F.Supp.2d 569, 578 (S.D.N.Y. 2011) (citing N.Y. Educ. Law § 3813(1)); <u>see also Parochial Bus Sys., Inc. v. Bd. of Educ.</u>, 60 N.Y.2d 539, 547 (1983) ("[N]o action or proceeding may be prosecuted or maintained against any school district or board of education unless a notice of claim has been presented to the governing body . . . ."). "Specifically, under New York law, a

21

plaintiff must file a notice of claim within ninety days after the claim arises, plead that it has been served, allow thirty days to elapse after the notice is filed before filing a complaint, and show that in that time period the defendant has either neglected or refused to satisfy the claim." Smith, 808 F.Supp.2d at 578 (citing N.Y. Educ. Law § 3813(1); N.Y. Gen. Mun. Law § 50-e). "These notice of claim requirements apply to state law claims regardless of whether those claims were brought in state or federal court." Id. (citing cases).

Defendants argue that plaintiff did not serve a notice of claim in connection with this action. Plaintiff fails to refute or respond to that argument, and has presented no evidence suggesting that she did serve a notice of claim. For this reason, plaintiff's claims pursuant to the New York State Human Rights Law are dismissed. See Henneberger v. County of Nassau, 465 F.Supp.2d 176, 198 (E.D.N.Y. 2006) ("The plaintiffs bear the burden of demonstrating compliance with the notice of claim requirement.").


E.     Claims Against Individual Defendants

Plaintiff has not identified any basis for liability against any of the individual defendants, and has failed to refute defendants' argument in her summary judgment opposition. For that reason, summary judgment is granted as to all claims against the individual defendants.

In any event, defendants accurately point out that neither the ADA nor the ADEA provide for individual liability. See, e.g., Doe v. Major Model Mgmt., No. 11 Civ. 6182, 2012 WL 763556, at *7 (S.D.N.Y. Mar. 9, 2012) ("The ADA applies to employers: it does not confer individual liability."); Cherry v. Toussaint, 50 Fed. Appx. 476, 477 (2d Cir. 2002) ("The ADEA precludes individual liability.")

III.    Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

_____
Sandra J. Feuerstein
United States District Judge

Dated:      May 31, 2012
            Central Islip, New York